# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **TONY JOE DAVIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-17-291-RAW-SPS |
| ) | |
| **COMMISSIONER of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

The claimant Tony Joe Davis requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born September 21, 1966, and was forty-nine years old at the time of the administrative hearing (Tr. 70). Educational records reflect that he completed the tenth grade while attending special education classes, and he has previously worked as a grinder and welder's helper (Tr. 26, 338-340). The claimant alleges he has been unable to work since January 31, 2014, due to blood clots that started in his legs and moved to his lungs, chronic obstructive pulmonary disease, sleep apnea, being on oxygen 24/7, pneumonia (bacterial and viral), high blood pressure, and dyslexia (Tr. 276-277).

### Procedural History

On March 6, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ John W. Belcher held an administrative hearing and found that the claimant was not disabled in a written opinion dated April 6, 2016 (Tr. 18-28). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that he could

lift/carry/push/pull no more than ten pounds occasionally and less than ten pounds frequently; stand/walk two to four hours in an eight-hour workday, and sit five to six hours in an eight-hour workday. Additionally, the ALJ determined that he could only occasionally climb stairs, balance, bend, stoop, kneel, crouch, and crawl; only occasionally be exposed to wetness and humidity; never climb bladders, ropes, or scaffolds; and should avoid all exposure to extreme cold and heat, fumes, odors, dusts, toxins, gases, poor ventilation, hazardous or fast machinery, unprotected heights, and driving. Finally, the ALJ limited the claimant to simple, routine, and repetitive tasks; superficial contact with co-workers or supervisors; and no contact with the public (Tr. 22). The ALJ concluded that the claimant could not return to his past relevant work. Next, he made a finding that the claimant was forty-seven years old, defined as a younger individual, on the alleged disability onset date, and that he had a high school education. He then found that the claimant was not disabled because there was work he could perform, *e. g.*, touch-up screener, addresser, and document preparer (Tr. 26-27).

### Review

The claimant argues on appeal that the ALJ erred by: (i) failing to consider he fell into a borderline age category when he made his decision, and (ii) improperly evaluating the opinions of the state reviewing physicians. The undersigned Magistrate Judge agrees with the claimant's first contention, and the Commissioner's decision should therefore be reversed and the case remanded for further proceedings.

The ALJ determined that the claimant had the severe impairments of embolisms, COPD, osteoarthritis, obesity, peripheral artery disease, status post left knee surgery,

affective disorder, and anxiety disorder (Tr. 20). He then determined that the claimant had the above-mentioned RFC for less than sedentary work.

The claimant contends that the ALJ erred in failing to consider that he fell into a borderline age range for purposes of disability evaluation. At the time of the ALJ's decision, the claimant was 49 years old, or five months and fifteen days from turning fifty years old. Under 20 C.F.R. § 416.963[2], the Commissioner has established three age categories, two of which apply here: (i) "younger person," under age 50; and (ii) a "person closely approaching advanced age," age 50-54. For a younger person, "in some circumstances, we consider that persons age 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45." 20 C.F.R. § 416.963(c). For a person closely approaching advanced age, "we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work." 20 C.F.R. § 416.963(d).

The ALJ is instructed to "not apply the age categories mechanically in a borderline situation." 20 C.F.R. § 416.963(b). The Tenth Circuit has held that a borderline situation exists "when the claimant is within 'a few days or months" of the next category." *Daniels v. Apfel*, 154 F.3d 1129, 1133 (10th Cir. 1998). Courts have differed on what qualifies as

---

[2] The claimant's date last insured was December 31, 2014, and the ALJ's decision was not made until April 6, 2016. For purposes of evaluating whether the claimant's age is in the borderline in this case, the date of the ALJ's decision is used, making this argument relevant only to his claim for benefits under Title XVI. *See, e. g.*, *Wilson v. Commissioner of Social Sec. Admin.*, 2017 WL 722052 (W.D. Okla. Feb. 23, 2017) ("Where . . . a claimant seeking DIB last met the insured status requirement before the date of adjudication, the oldest age to be considered is the person's age at the date last insured. . . . But for a claimant seeking SSI, the claimant's age on the date of the ALJ's decision is the relevant date.") (internal quotations and citations omitted).

falling within the borderline range. *Compare Cox v. Apfel*, 166 F.3d 346 (10th Cir. 1998) (unpublished table opinion) (error where Plaintiff was within six months of next age category) *with Lambert v. Chater*, 96 F.3d 469, 470 (10th Cir. 1996) (claimant did not fall into borderline category where she was seven months short of the next category). Nevertheless, "it is clear that the ALJ must address the issue." *Nugent v. Colvin*, 2014 WL 4854733, at *2 (E.D. Okla. Sept. 30, 2014), *citing Byers v. Astrue*, 506 Fed. Appx. 788, 791 (10th Cir. Dec. 27, 2012) ("Based on the record before us, it is unclear whether the ALJ was even aware of the potential borderline situation in this case. . . . But the decision does not address the issue of whether [Byers] fell within the borderline or whether he should be considered in the next age bracket."). *See also Daniels*, 154 F.3d at 1133-1134 n.5 ("Determining whether a claimant falls within a borderline situation appears to be a factual rather than discretionary matter, and the ALJ erred by not making the necessary factual finding."). This is particularly important where, as here, if the ALJ had found the claimant to be in the borderline age and that he ought to be considered a person closely approaching advanced age, he could qualify for application of the Grids under 20 C.F.R. Part 404, Subpart P, App. 2, which the Commissioner does not dispute. *Benson v. Colvin*, 2016 WL 4690415, at *4 (W.D. Okla. Sept. 7, 2016) ("The failure to do so is reversible legal error if the reviewing court 'cannot tell whether the ALJ would have reached the same result' had he or she considered using the older age category in the claimant's case."), *quoting Byers*, 506 Fed. Appx. at 791.

The Commissioner nevertheless asserts that applying the borderline age analysis would result in a different decision, and that the burden of proof is on the Plaintiff to

demonstrate that the higher age category applies. The claimant has cited to the Hearings and Appeals Litigation and Law Manual (HALLEX) I-2-2-42, while the Commissioner cites to the Program Operations Manual System (POMS) DI 25015.006 for reference to this argument. HALLEX I-2-2-42(C)(3) says "claimant must show that the factor(s) have a progressively more adverse impact on his or her ability to adjust to other work as the period between the claimant's actual age and attainment of the next higher category lengthens." The POMS DI measure is similar, but it does not articulate that the burden falls to the claimant, although the Commissioner's sole reliance on the HALLEX is to insist that the burden does fall to the claimant. This is in contradiction to Tenth Circuit precedent. *Daniels*, 154 F.3d at 1134 ("Nothing in § 404.1563(a) [or § 416.963(c)] supports this position [that places the burden on a claimant.] . . . The Commissioner's argument rewrites the regulation to say essentially that 'in borderline situations, we will allow you – the claimant – to prove why the grids should not be applied mechanically.' The plain language of the regulation does not allow this interpretation."). Moreover, this argument also fails because under any standard – HALLEX, POMS DI, established precedent – the ALJ is required to indicate that he considered the claimant's borderline age situation. This is absent from the ALJ's decision, and is error.

    The claimant also asserts that the ALJ erred in evaluating the opinions of the state reviewing physicians who assessed his mental RFC, and this argument applies to both his Title II and Title XVI applications. Dr. William Farrell, Ph.D., reviewed the record and found that the claimant was markedly limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the

7

general public, while he was moderately limited in the ability to work in coordination with or in proximity to others without being distracted by them, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 127-128). Dr. Farrell concluded that the claimant retained the capacity to perform simple one- to two-step instructions, and that he retained this capacity for two-hour periods over an eight-hour workday throughout a forty-hour workweek (Tr. 127-128). He further stated that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and could adapt to a work situation, but that he could not relate to the general public (Tr. 128). On reconsideration, Dr. Phillip Massad, Ph.D., made identical findings (Tr. 161-163). The ALJ's RFC, as more fully described above, limited the claimant to "simple, routine, and repetitive tasks" (Tr. 22), and the ALJ assigned great weight to the opinions of Dr. Massad and Dr. Farrell (Tr. 25).

Social Security Ruling 96–6p instructs that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4 (July 2, 1996). These opinions are to be treated as medical opinions from non-examining sources. *Id.* at *2. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the opinion in his decision. *Id. See also Valdez v. Barnhart,* 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii). Here, the ALJ's

8

sum total assessment related to Dr. Massad's and Dr. Farrell's opinions was that he gave them "great weight" (Tr. 25). The ALJ did not, however, discuss the finding that the claimant retained the capacity to understand and remember simple one- to two-step instructions and made no explanation as to whether "simple, routine, and repetitive tasks" would allow for the claimant's limitations in the same way. *See, e.g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

The government argues that Dr. Massad's and Dr. Farrell's statements were not part of the ALJ's RFC assessment, and that the claimant misunderstands the form itself and that the referenced statements were "simply notations used to help formulate the final [RFC]." The Commissioner further asserts that the jobs identified by the ALJ, touch-up screener, addresser, and document preparer, nevertheless account for any limitation identified by the reviewing physicians. The undersigned Magistrate Judge, however, finds that the jobs identified *do not* account for those limitations, with regard to the reasoning level requirements. The VE identified as work the claimant could perform with the associated RFC the jobs of touch-up screener, as described in the Dictionary of Occupational Titles (DICOT) at DICOT § 726.684-110; addresser, DICOT § 209.587-034; and document preparer, DICOT § 249.587-018. The first two jobs have a reasoning level of two, while the job of document preparer has a reasoning level of 3. A reasoning level of two requires

a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations," while a reasoning level of 3 requires a worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations" *see* DICOT §§ 726.684-110, 209.587-034 and 249.587-018. The reasoning levels for jobs in the DOT best identify the level of simplicity (or, conversely, complexity) associated with the job. *See Cooper v. Barnhart,* 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) ("The reasoning level, as identified by Plaintiff, appears more similar to whether or not a claimant has a limitation to performing only simple tasks.") [citations omitted]. If a claimant is limited to simple one- to two-step instructions, it stands to reason that a job requiring the ability to understand and carry out detailed but uninvolved written or oral instructions and with problems involving a few concrete variables (a reasoning level 2) would create a conflict. *See McKinnon v. Astrue,* 2010 WL 3190621, at *5 (D. Colo. Aug. 12, 2010); *Allen v. Barnhart,* 2003 WL 22159050, at *10 (N.D. Cal. Aug. 28, 2003) (examining the requirements of the GED reasoning level of 2 and finding that "[t]he need to follow 'detailed' and 'involved' instructions exceeds the ALJ's limitation of plaintiff to 'simple, routine tasks.' Such instructions are not simple and uncomplicated, or limited to one or two steps."). "[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel,* 196

F.3d 1084, 1091 (10th Cir. 1999). *See also Krueger v. Astrue,* 337 Fed. Appx. 758, 760–762 (10th Cir. 2009) (reversing and remanding in part because the ALJ failed to resolve a conflict between VE's testimony and DOT job descriptions); *Poppa v. Astrue,* 569 F.3d 1167, 1173 (10th Cir.2009) (noting that SSR 00–4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]"); *Hackett v. Barnhart,* 395 F.3d 1168, 1175 (10th Cir. 2005) (applying *Haddock* to nonexertional limitations). Furthermore, "[t]he [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Here, there *is* a conflict that the ALJ was required to resolve. *See Haddock*, 196 F.3d at 1091.

Although the unresolved conflict as to the claimant's mental limitations would have been harmless error if other jobs had been identified that did not pose a conflict, they are not harmless here because all three jobs had reasoning levels of two or three. *See Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding that any error on whether claimant could perform jobs was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").

Accordingly, the undersigned Magistrate Judge finds that this case should be remanded. "On remand, the adjudicator must evaluate the borderline age situation—by determining which of the categories on either side of the borderline best described [Plaintiff] at the time the borderline evaluation should have been made by the first

11

adjudicator—and make findings susceptible to review." *Benson*, 2016 WL 4690415, at *6, *quoting Noteware v. Astrue*, 2011 WL 3651295, at *5 (W.D. Okla. Aug. 18, 2011). Furthermore, the cases should be reversed and remanded for proper analysis of the medical opinions of record. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 24th day of August, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**